### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| PRESTON TUCKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>BLUE HAMMER ROOFING, INC.,<br><br><br>Defendant. | Case No.<br><br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Preston Tucker ("Plaintiff") brings this Complaint and the following cause of action against Defendant Blue Hammer Roofing, Inc. ("Defendant") alleging as follows:

## INTRODUCTION

1. This case involves a telemarketing campaign by Defendant who made, or caused to be made, phone calls to residential numbers nationwide to market its services by contacting numbers repeatedly after those numbers were added to the National Do-Not-Call registry, a plain violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

2. The recipients of these unlawful calls, which include Plaintiff and the Proposed Class, are entitled to damages under the TCPA, and because telemarketing campaigns make calls *en masse*, the appropriate vehicle for recovery is a class action lawsuit.

## PARTIES

**Plaintiff Preston Tucker**

3. Plaintiff is an individual residing in Weld, Colorado.

**Defendant Blue Hammer Roofing, Inc.**

1

4. Defendant is a Texas for-profit company with its principal place of business located at 8330 Lyndon B Johnson Fwy B775, Dallas, Texas 75243. Defendant is registered to do business in the State of Colorado.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question of law under the TCPA, 47 U.S.C. § 227, *et seq*.

6. This Court has personal jurisdiction over Defendant Blue Hammer Roofing, Inc. because it is registered and systemically and continuously conducts business in Colorado.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's cause of action occurred in this district.

## TCPA BACKGROUND

8. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. Lexis 3544, at *5 (2020).

9. It has long been the law that a seller of goods or services can be liable for TCPA violations even if the seller does not directly place or initiate the calls. The provision that establishes a private right of action against an entity that violates the National Do-No-Call Registry restrictions provides that "[a] person who has received more than one telephone call within any twelve (12) month period by or on behalf of the same entity in violation of the regulations prescribed under this

2

subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added).

10. As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, Mem. Op. & Order, 10 FCC Rcd. 12391, 12937, ¶ 1.

11. The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See 1995 TCPA Reconsideration Order*; *Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling*, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

12. The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. *In re Joint Pet. filed by DISH Network LLC*, Declaratory Ruling, 28 FCC Rcd. 6574 (2013).

13. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

14. According to the online robocall tracking service "YouMail," 4.5 billion robocalls were placed in July 2023 alone, at a rate of 145.5 million calls per day. [1]

15. The FCC has received an increased number of complaints about unwanted calls, with over 150,000 complaints in 2020, and over 160,000 complaints in 2021. [2]

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC."[3]

17. "The FTC receives more complaints about unwanted calls than other Complaints combined." [4]

## FACTUAL ALLEGATIONS

18. Defendant is a residential and commercial roofing company with offices in Texas and Louisiana.[5]

19. Defendant makes, or causes to be made, calls to consumers to solicit business for its services.

20. Plaintiff is the subscriber and sole user of his 1151 number and is financially responsible for phone service of the number.

21. Plaintiff's 1151 number is a residential line located in Colorado.

---

[1] *See July 2023 Nationwide Robocall Data*, YouMail: Robocall Index, www.robocallindex.com (last visited Aug. 24, 2023).

[2] FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-helpcenter-data.

[3] Tom Wheeler, Cutting off Robocalls (July 22, 2016), statement of FCC chairman.

[4] Staff of the Federal Trade Commission's Bureau of Consumer Protection, In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).

[5] *About Us*, https://www.bluehammerroofing.com/about-us/ (last visited Apr. 24, 2024).

22. Plaintiff registered his 1151 number with the National Do-Not-Call Registry on or around August 6, 2021, and has been registered at all times relevant to this action.

23. On or around March 29, 2024, Defendant made, or caused to be made, a telemarketing call to Plaintiff's 1151 residential number attempting to market roofing services to Plaintiff. The call was made by the number (214) 619-7153, a number believed to be owned by Defendant, or an agent of Defendant.

24. On or about April 1, 2024, Defendant or Defendant's agent made, or caused to be made, a telemarketing call to Plaintiff's 1151 residential number, again attempting to market roofing services to Plaintiff. The call was made by the number (214) 619-7153, a number believed to be owned by Defendant or an agent of Defendant.

25. Even though Plaintiff's residential number was, and has been at all times relevant, registered on the National Do-Not-Call Registry, Plaintiff continued to receive calls from Defendant or its agents until April 5, 2024.

26. The following chart shows the telemarketing calls that were made, or caused to be made by Defendant's (214) 619-7153 number to Plaintiff's residential 1151 number:

| Date | Number of Calls |
|---|---|
| March 29, 2024 | One phone call |
| April 1, 2024 | One phone call |
| April 2, 2024 | Five phone calls |
| April 3, 2024 | Three phone calls |
| April 4, 2024 | Six phone calls |
| April 5, 2024 | Two phone calls |

5

27. In total, between March 29, 2024 and April 5, 2024, Plaintiff received eighteen unsolicited and unwanted calls from Defendant attempting to solicit Plaintiff's business.

28. Defendant's calls were transmitted to Plaintiff's residential cellular telephone, and within the timeframe relevant to this action.

29. The calls were made to market Defendant's services and to solicit Plaintiff's business.

30. Defendant made, or caused to be made, the subject phone calls to Plaintiff's residential number from within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this jurisdiction.

31. Upon information and belief, Defendant caused other telemarketing phone calls to be made to individuals from this judicial jurisdiction.

32. Defendant's phone calls were not made for an emergency purpose or to collect on a debt pursuant to 47 U.S.C. § 227(b)(1)(B).

33. At no point during the relevant time period did Plaintiff and Defendant have a prior existing business relationship permitting Defendant to make telemarketing calls to Plaintiff's residential number.

34. Plaintiff has no existing business relationship with Defendant.

35. At the time Plaintiff received each of these phone calls, Plaintiff never consented to receiving telemarketing calls from Defendant. As a result, Defendant should not have placed any telemarketing calls to Plaintiff.

36. Upon information and belief, Defendant, or someone acting on its behalf, violated Plaintiff's privacy by making each of the above reference unwanted telemarketing phone calls, and they constitute a nuisance as they are annoying and harassing.

37. Upon information and belief, Defendant failed to honor the National Do-Not-Call registrations of individuals' residential lines while conducting telemarketing campaigns.

## CLASS ALLEGATIONS

**National Do-Not-Call Registry Class**

38. Plaintiff brings Count I of this action under Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class tentatively defined as:

> All natural persons in the United States who, from February 7, 2020, to the commencement of this litigation, who received more than one telephone solicitation within twelve months (either phone call or text message) from Defendant after registering their telephone number with the National Do-Not-Call Registry.

**The Action Meets the Requirements to be Certified as a Class**

39. Plaintiff is a member of the proposed class.

40. The proposed Class can be identified through telephone records and databases used in transmitting the telemarketing calls.

41. **Numerosity.** The number of Putative Class Members is believed to be in the hundreds or thousands, rendering the classes so numerous that individual joinder of all Class Members is impracticable.

42. **Commonality.** There are questions of law and fact common to Plaintiff and to the proposed class under the TCPA, including, but not limited to, the following:

   a. Whether Defendant initiated, or caused to be initiated, telephone sales calls to Plaintiff and the Class Members;

   b. Whether Defendant can meet its burden of showing that it had prior express written consent to make such calls;

   c. Whether Defendant placed solicitations to individuals who registered their telephone numbers on the National Do-Not-Call Registry more than 30 days prior;

7

      d.   Whether Defendant willfully or knowingly violated the TCPA by failing to honor the National Do-Not-Call registry; and

      e.   Whether Defendant is liable for damages, and the amount of such damages.

43.   **Typicality.** Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of the claims of the proposed Putative Class's Members'. Plaintiff would only seek individual or actual damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same cause of action and upon the same facts as the other Members of the proposed Putative Class.

44.   **Adequacy.** Fed. R. Civ. P. 23(a)(4). Plaintiff is an adequate representative of the proposed Putative Class because his interests coincide with, and are not antagonistic to, the interests of the Members of the proposed Putative Class he seeks to represent; he has retained counsel competent and experienced in such litigation; and he intends to prosecute this action vigorously. Plaintiff and his Counsel will fairly and adequately protect the interests of Members of the proposed Putative Class.

45.   **Superiority.** Fed. R. Civ. P. 23(b)(3). Questions of law and fact common to the Members of the proposed Putative Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant's conduct and knowledge, not upon the effect of Defendant's conduct on the Putative Class Members.

46.   The statutory damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Members of the Putative Class to individually redress effectively the wrongs done to them, as the TCPA has no attorney's fee shifting

provision. Even if the Members of the proposed Putative Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

47. Class certification is appropriate because Defendant has acted on grounds generally applicable to the proposed Putative Class, making appropriate equitable injunctive relief with respect to Plaintiff and the proposed Putative Class Members. Fed. R. Civ. P. 23(b)(2).

48. **Injunctive and Declaratory Relief Appropriate.** Defendant has acted on grounds generally applicable to the Putative Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Putative Class appropriate on a class wide basis. Moreover, on information and belief, and based on his experience, Plaintiff alleges that the calls made by Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## CAUSE OF ACTION
### COUNT I
**Violations of 47 U.S.C. § 227(c),** *et seq*. **and 47 C.F.R. § 64.1200(c)**
**(On Behalf of Plaintiff and the National Do-Not-Call Class)**

49. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

50. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

51. 47 C.F.R. § 64.1200(c) is "applicable to any persons or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

52. Under the TCPA, a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity may bring a private cause of action against such entity based on a violation of the TCPA.

53. Plaintiff and the Class each registered on the National Do-Not-Call Registry more than 30 days prior to receiving such calls.

54. Plaintiff and the Class received more than one such call in a twelve-month period from Defendant.

55. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the National Do-Not-Call Registry Class received more than one call in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

56. Pursuant to 47 U.S.C. § 227(c)(5), Plaintiff and each the Class is entitled to recover from Defendant $500.00 in statutory damages for each such violation. In the event that Defendant are found to have knowingly or willfully violated the TCPA, this Court may, in its discretion, increase the amount of statutory damages to not more than $1,500.00 for each such violation with Plaintiff and each Class Member.

57. In addition, the TCPA allows the Court to enjoin Defendant's violations of the TCPA's regulations prohibiting calls to phone numbers registered on the National Do-Not-Call Registry. *See* 47 U.S.C. § 227(c)(5)(A).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and as a representative of all other persons similarly situated, prays for judgment against Defendant, awarding relief as follows:

a. Certifying the proposed Class List Class under Fed. R. Civ. P. 23 and appointing Plaintiff and his counsel to represent the Class;

b. Statutory damages as provided for under 47 U.S.C. § 227(c)(5), trebled as may be appropriate;

c. A permanent injunction restraining Defendants from making, or having made on their behalf, any additional non-emergency calls to residential lines that are on the National Do-Not-Call Registry without first obtaining the prior express written consent of the called party;

d. Pre-judgment interest from the date of filing this suit;

e. A reasonable attorney's fee to be paid out of any common fund created by virtue of this litigation;

f. All costs of this proceeding; and

g. All general, special, and equitable relief to which Plaintiff and the respective Members of the Class are entitled to by law.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

| | |
|---|---|
| Date: May 9, 2024 | Respectfully submitted,<br><br>*/s/ Kevin M. Cox*<br>Kevin M. Cox (OH Bar # 0099584)<br>**THE LYON FIRM**<br>2754 Erie Avenue<br>Cincinnati, OH 45208<br>Phone: (513) 381-2333<br>Fax: (513) 766-9011<br>*kcox@thelyonfirm.com*<br><br>Philip J. Krzeski (OH Bar # 0095713)<br>**CHESTNUT CAMBRONNE PA**<br>100 Washington Avenue South, 1700<br>Minneapolis, MN 55401<br>Telephone: (612) 339-7300<br>Fax: (952) 336-2940<br>*pkrzeski@chestnutcambronne.com*<br><br>*Attorneys for Plaintiff Preston Tucker* |