**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Nina Y. Wang**

Civil Action No. 24-cv-01287-NYW-NRN

PRESTON TUCKER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

BLUE HAMMER ROOFING, INC.,

Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This matter is before the Court on Defendant's Motion for Summary Judgment (or "Motion"). [Doc. 29]. Plaintiff responded in opposition, and Defendant replied. [Doc. 32; Doc. 33]. The Court has reviewed the Motion, the related briefing, the applicable case law, and the entire docket. For the reasons set forth herein, Defendant's Motion is **GRANTED**.

## BACKGROUND

This case alleges a violation of the Telephone Consumer Protection Act ("TCPA"). The material facts in this section are drawn from the summary judgment record and are undisputed unless otherwise noted.

Plaintiff Preston Tucker ("Plaintiff" or "Mr. Tucker") is the subscriber to the phone number at issue in this case ("1151 number"), which is subscribed to his residential address. [Doc. 32 at 7]. He registered the 1151 number with the National Do-Not-Call

Registry ("DNC list") on August 6, 2021 and has maintained his registration since then. [*Id.* at 8].

Mr. Tucker has multiple phone numbers. [Doc. 29 at 5; Doc. 32 at 8]. He owns a separate telephone line provided by his current employer, Nike. [Doc. 29 at 5; Doc. 32 at 8]. He previously worked at Target, which subsidized a portion of his 1151 number. [Doc. 29 at 5–6]. However, he no longer works at Target, and Nike does not provide subsidies for the 1151 number. [Doc. 29 at 6; Doc. 32 at 8]. Instead, Mr. Tucker and his wife are responsible for paying for the 1151 number. [Doc. 32 at 7].

Mr. Tucker is also the owner of five investment properties, one of which is in Carrollton, Texas. [Doc. 29 at 5–6]. Mr. Tucker claims he has not held out his 1151 number to the public for business purposes, but he has made or received calls on the number related to his investment properties. [Doc. 29 at 5; Doc. 32 at 8].

Following several thunderstorms in Carrolton in March 2024, Defendant Blue Hammer Roofing ("Defendant" or "Blue Hammer") called Plaintiff at least twenty times over six weeks at his 1151 number. [Doc. 29 at 6; Doc. 32 at 9]. Plaintiff answered one call, ignoring the rest. [Doc. 29 at 6; Doc. 32 at 9]. The caller, identifying themselves as Blue Hammer Roofing, offered a free roofing inspection to see if Plaintiff qualified for a roof replacement under his insurance. [Doc. 29 at 7; Doc. 32 at 9]. Mr. Tucker and Blue Hammer had no prior relationship. [Doc. 32 at 8]. When Mr. Tucker feigned interest, Blue Hammer followed up about the offer, but Mr. Tucker never went through with the inspection. [Doc. 29 at 7; Doc. 32 at 9–10].

On May 9, 2024, Plaintiff filed the instant Complaint individually and on behalf of all others similarly situated (which is characterized as "the National Do-Not-Call Class"),

asserting one count of violation pursuant to the TCPA and its implementing regulations, 47 U.S.C. § 227(c) *et seq.* and 47 C.F.R. § 64.1200(c). [Doc. 1]. Discovery in this matter has been stayed pending the determination of this instant Motion. [Doc. 28]. Defendant's Motion for Summary Judgment is fully briefed and ripe for review, and thus, the Court now turns to its substantive consideration.

**LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if there is sufficient evidence so that a rational trier of fact could resolve the issue either way" on a fact that is "essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores*, 144 F.3d 664, 670 (10th Cir. 1998).

The moving party bears "both the initial burden of production on a motion for summary judgment and the burden of establishing that summary judgment is appropriate as a matter of law." *Kannady v. City of Kiowa*, 590 F.3d 1161 (10th Cir. 2010). If the movant meets this initial burden, the nonmovant "must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996). The nonmovant may not rely on "[u]nsubstantiated allegations" or "mere speculation, conjecture, or surmise." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). In applying this standard, the Court views the factual record "in the light most favorable to the party opposing summary judgment, extending to that party all reasonable factual inferences." *Jenkins*, 81 F.3d at 990.

## ANALYSIS

Defendant argues that Plaintiff's claim fails because: (1) the challenged calls were not "telephone solicitations" as defined by the TCPA, and (2) Plaintiff has not shown that the 1151 number is residential. [Doc. 29]. Because the Court finds that Plaintiff has not established a genuine dispute of material fact with respect to (1), the Court need not reach (2), and summary judgment is granted.

### I. Telephone Solicitation

The TCPA's implementing regulation provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c). The TCPA defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

Defendant contends that the call offering a free roof inspection does not fall within the definition of "telephone solicitation" under the TCPA, because it does not encourage the called party to purchase something from the caller. Instead, it offers Plaintiff the free service of inspection to see if his insurance would cover a roof repair. [Doc. 29 at 8].

Plaintiff counters that a "telephone solicitation" need not explicitly offer to sell goods or services. Rather, where the implication of the call is clear from the context, such as whether the call was directed at a non-customer and was related to the defendant's services, reasonable factfinders may find that the call was made to encourage the

purchase of services. [Doc. 32 at 11–12]. Further, Plaintiff points out that the text of the regulation does not specify any particular person who must be encouraged to purchase the services for the call to qualify as a telephone solicitation. [*Id.* at 15]. Thus, a call falls within the regulation at issue even if Plaintiff's insurance company would fully cover the purchase. [*Id.*]. Defendant responds that such a reading goes against the rule of statutory construction that courts choose the most natural and ordinary reading of a statutory term and contradicts the overall statutory scheme which distinguishes telephone solicitations from general commercial calls. [Doc. 29 at 11–12]. Additionally, Defendant argues that Plaintiff's interpretation would render the regulation unconstitutional. [*Id.* at 13–15].

***Free Estimate.*** It is undisputed that Blue Hammer's telephone calls offered a free estimate to Mr. Tucker and did not directly encourage Mr. Tucker to make any purchase.[1] [Doc. 29 at 7; Doc. 32 at 9]. The Parties cite no binding authority from either the Supreme Court or the Tenth Circuit—and this Court independently found none—that addressed this specific issue. *See generally* [Doc. 19; Doc. 32; Doc. 33]. But the Seventh Circuit addressed a similar scenario in *Hulce v. Zipongo*, 132 F.4th 493 (7th Cir. 2025). There, defendant Foodsmart called and texted plaintiff Hulce approximately twenty times to offer free nutritional consultations that would be fully covered by Plaintiff's insurance. *Id.* at

---

[1] To the extent that Plaintiff argues that the offer by Blue Hammer was not "free" because he would be required to pay a deductible under his property insurance policy even if his insurance covered the roof repair, [Doc. 32 at 14 (citing Texas Ins. Code § 707.002)], he fails to adduce sufficient evidence to create a genuine dispute of fact. However, as Defendant correctly points out, Mr. Tucker offers no evidence on the type of his property insurance and whether he would actually be required to pay a deductible under his plan. Further, such deductible presumably would not be paid to Blue Hammer, but to Mr. Tucker's insurance company. *Cf. Stark v. Hill*, No. 23-cv-00934-JLS-BJC, 2024 WL 7017942, at *4 (S.D. Cal. Aug. 7, 2024) (finding that text messages stating "Do you need new energy efficient doors and windows? Call us at [REDACTED] for a free estimate" qualified as "telephone solicitations" under the TCPA).

496. Finding that "telephone solicitations" must persuade or urge someone to pay for a service, the *Hulce* court held that Foodsmart's calls could not encourage Hulce to pay for services as they were already free to him. *Id.* at 500. Thus, the Seventh Circuit concluded that a call that offers free services to the recipient of the call is not a "telephone solicitation," even if the call "encourages" the recipient's insurance company to make a purchase. Other lower courts outside the Tenth Circuit have held the same. *See, e.g.*, *Dobronski v. Credit Swag Ventures, Inc.*, No. 25-cv-11777, 2026 WL 2804605, at *5 (E.D. Cal. Sept. 18, 2026) (holding that the calls did not amount to "telephone solicitations" under the TCPA because they at most suggested "encouragement to use [the caller's] free services); *Trujillo v. Free Energy Sav. Co., LLC*, No. 5:19-cv-02072-MCS-SP, 2020 WL 7768722 (C.D. Cal. Dec. 21, 2020) (holding that calls that offered free services to be paid for by a governmental agency was not a "telephone solicitation" under the TCPA).

Moreover, Mr. Tucker would not have been required to make any purchases following the free roof inspection. It is undisputed that the actual service offered by Blue Hammer in the call, the free inspection, would have been free to both Mr. Tucker and his insurance company regardless of Mr. Tucker's insurance coverage. This is distinct from cases like *Hulce*, where the actual service offered was free to the plaintiff but at a cost to the insurer. 132 F.4th at 496. As such, even if the Court accepts that the call was intended to encourage Mr. Tucker's insurance company to purchase Blue Hammer Roofing's services, the initial call offering the inspection, an entirely free service, would not fall within the definition of "telephone solicitations."

***Encouraging Non-Party Purchase.*** The Court next turns to considering Plaintiff's argument that it is sufficient to encourage a non-party to the call to purchase the caller's services. The text of the TCPA does not specify who must be encouraged to make a purchase in a telephone solicitation. However, the lack of an explicit subject does not necessarily mean that Congress did not intend a likely set of actors. In statutory interpretation, courts must opt for "the most natural or ordinary reading of the term even if there are other plausible readings of the statutory text." *United States v. Davey*, 151 F.4th 1249, 1255 (10th Cir. 2025) (alterations omitted).

This Court concurs with Defendant that the most natural reading of the term "encourage" in this context suggests a targeted persuading of the called party. As the *Hulce* court pointed out, Congress could have used a variety of alternative phrasings, such as calls with the purpose of "causing" or "resulting in" a purchase, had it wanted to limit calls that merely made a purchase more likely to happen. *See* 132 F.4th at 498–99. Instead, Congress chose "encouraging," which carries with it the reasonable implication of being directed at the chosen party. "Neither the statutory nor the regulatory text uses words like 'indirectly purchase' or 'purchase for the benefit of another person.'" *Spiegel v. Reynolds*, No. 15-cv-08504, 2017 WL 4535951, at *4 (N.D. Ill. Oct. 11, 2017), *aff'd sub nom. Spiegel v. Associated Cmty. Servs., Inc.*, 733 F. App'x 311 (7th Cir. 2018). Further, 47 U.S.C. § 227(a)(4) states that the telephone solicitations must be transmitted to "any person," and the natural reading of the statute suggests that this person is the one to whom the encouragement is directed. As observed by the *Trujillo* court, many courts have assumed that the target of the caller's encouragement must be the recipient of the call for

there to be "telephone solicitation" under the TCPA. *Trujillo*, 202 WL 7768722, at *2 (collecting cases).

The mere fact that Blue Hammer could ultimately profit from a completed roof repair job is not sufficient to qualify their communications as telephone solicitations. If so, there would be no distinction between "telephone solicitations" and all commercial calls. This interpretation is consistent with the overall statutory scheme. *See Davey*, 151 F.4th at 1256 ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). As Defendant points out, the regulations differentiate between telephone solicitations and calls that are "made for a commercial purpose but do[] not introduce an advertisement or constitute telemarketing." 47 C.F.R. § 64.1200(a)(3)(iii). This language demonstrates that the TCPA recognizes that calls that are commercial in nature are not always telemarketing.

Plaintiff contends that Defendant's purpose in sending communications is an "almost quintessential question[] of fact." *Abboud v. Circle K Stores Inc.*, No. 23-cv-01683-PHX-DWL, 2025 WL 307039, at *6 (D. Ariz. Jan. 27, 2025). Courts must thus approach the issue "with a measure of common sense," even if there is no explicit offer for goods and services. *Chesbro v. Best Buy Stores, LP*, 705 F.3d 913, 918 (9th Cir. 2012). This may be true where there is an eventual purchase down the road that a plaintiff would make, as is true in the cases cited by Plaintiff. *See Hudson v. Homeadvisor, Inc.*, 348 F.R.D. 690, 691–92 (D. Colo. 2025) (defendant sending links for professionals who plaintiff would pay for home projects); *Abboud*, 2025 WL 307039, at *2 (defendant texting additional offers for a convenience store); *Wilson v. Skopos Fin., LLC*, No. 25-cv-00376-MC, 2026 WL 810636, at *1 (D. Or. Mar. 24, 2026) (defendant encouraging the completion

of a loan application). But none of the cases Plaintiff relies upon has facts similar to the facts in the present case, which involves free services related to an insurance-covered product. Instead, they involve situations where the plaintiff argued that the defendant's communications, despite having no explicit mention of a product, served as a foot-in-the-door that would lead to the plaintiff's future purchases. *See, e.g.*, *Chesbro*, 705 F.3d at 918 (finding defendant urging plaintiffs to redeem rewards was pretextual for encouraging purchases).

Accordingly, this Court respectfully concludes that summary judgment is appropriate because Defendant's calls do not constitute "telephone solicitations" under the TCPA and respectfully **GRANTS** summary judgment on that basis. In turn, the Court need not reach Defendant's alternative arguments. Finally, because Mr. Tucker's claim under the TCPA cannot proceed, any claims brought on behalf of those similarly situated also fail. *See Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1213 (10th Cir. 2006) (holding that class-action allegations are properly dismissed when the individual claims fail).

## CONCLUSION

For the reasons stated therein, **IT IS ORDERED** that:

(1) Defendant's Motion for Summary Judgment [Doc. 32] is **GRANTED**;

(2) The Clerk of the Court is **DIRECTED to ENTER** judgment in favor of Defendant Blue Hammer Roofing, Inc. and against Plaintiff Preston Tucker, individually and on behalf of all others similarly situated;

(3) Defendant Bue Hammer Roofing, Inc. is **AWARDED** its costs pursuant to Fed. R. Civ. P. 54(d) and D.C.COLO.LCivR 54.1; and

(4) The Clerk of the Court is **DIRECTED** to **TERMINATE** this case.

DATED: October 19, 2026

BY THE COURT:

Nina Y. Wang
United States District Judge